Our next case for argument this morning is Mueller v. Apple Leisure Corporation. The nature of the case is about poison fish, but the appeal is about procedural fairness. I represent a young couple that was a whore on honeymooners, and they purchased an all-inclusive vacation from a vertically integrated hospitality company, is the way they describe themselves, that sells vacation services as part of those food, and the wife was injured when she consumed grouper with ciguatera food poisoning. When the amended complaint was filed and the appellees were brought into the case, they filed a motion under 12b-3, as well as 12b-2 and 12b-6, but importantly, and what the court eventually decided, was to view a motion on improper venue. The sole argument for improper venue was a foreign selection clause, which was alleged to be included in some documents that they attached to an affidavit. It wasn't part of the complaint. Is there any doubt that the documents contained the foreign selection clause? I do have doubt. We wanted a chance to authenticate or disambiguate the documents. If you look to the fair trade clause that they're citing that has this foreign selection, there's actually a place for the customer to sign. It's not filled out in this case. The affidavit we were faced with came entirely out of the blue, saying these were part of the contract that you agreed with, and it was never given an opportunity to take discovery. I explicitly asked for that, or the Millers asked for that, at the trial court level, saying that limited discovery on the jurisdictional issues and on the contract itself should be allowed, but that didn't happen. Instead, the court changed the game. The court changed the motion from improper venue, which under the Atlantic Marine case, which I heavily rely on in this appeal, should have only been whether the venue statute was satisfied, and instead construed it as foreign non-convenience. Atlantic Marine is notable. It was a Supreme Court case from about 10 years ago that resolved a split among circuits as to how a contractual foreign selection clause can be enforced. I think as a result of that case, this circuit's procedure would have shifted from treating those under 12b-3 to having to treat them as foreign non-convenience in response to the 12b-3 motion that was cited to the district court. If I understand the appellees correctly, they're saying that they moved under Rule 12b-3 because they don't think there's statutory venue. I mean, their claim is there's no statutory venue, there's no personal jurisdiction, and there's a foreign selection clause. And if your argument is there's no statutory venue and there's a foreign selection clause, why isn't Rule 12b-3 exactly the right thing to use? Well, I think that... 12b-3 is the only way to say there's no statutory venue. And I agree with that. They're making that argument. So what's wrong with the 12b-3 motion? Well, the 12b-3 motion is limited to whether there's statutory venue, which was the holding of Atlantic Marine. So I addressed whether statutory venue exists. Do you think there would be a problem if somebody moves to dismiss a complaint under Rule 12b-6, Failure to State a Claim, and the district judge says, no, no, sorry, that's the wrong one. The complaint does state a claim, but your papers show that you're entitled to judgment on the pleadings under Rule 12c, and I'm now dismissing the complaint, giving judgment on the pleadings. Do you think that's reversible error? I think there's a distinction between that scenario. So the answer is no. I think there's a distinction between that scenario... That's what we tell judges to do. Right. The distinction here is that there's a contract or alleged contract coming in from left field, which I never had a chance to fairly address by discovery. It puts the Millers in an impossible situation. Yeah, you keep talking about discovery, but you don't explain what it is you want to discover. I want to discover the contract. I'm two years into this litigation. I thought the defendants furnished the contract. I don't think so. I think that... Do your clients deny receiving the Forum Selection Clause? They do. They're recollection, and they don't have the paperwork anymore themselves, which is why I need discovery both from... I'm asking a concrete question. Do your clients under oath deny receiving the Forum Selection Clause? If they do, then I could easily understand a need for discovery to find out whether that is true. But if they don't, what's one going to discover? They have no recollection of a Forum Selection Clause. There was some paperwork that passed hands, and we don't have it anymore. Yeah, well, look, the world is full of people who are bound by contracts who deny having read them, who deny remembering them, who deny understanding them. That was true in Carnival Cruise Lines. The plaintiffs said, well, we didn't read the backside of the cruise ticket. We didn't understand the Forum Selection Clause. And the Supreme Court said, that's not relevant. You need to have some idea of what's going to be discovered, do you not? I do, and the first request to produce is for the contract to probably both the travel agency and to Apple, which should have it. As a matter of fairness, we should be having that opportunity to see exactly how these were presented. It's concerning when you have things that are clearly boilerplate that have places to be signed by the defendants and aren't signed. There's no indication that they ever agreed to this. As far as their recollection goes, the impossible position that Miller's are in is either I can submit incomplete evidence for the court on the Forum Selection Clause issue and run the risk of having the court make a determination based upon their recollection only without aid of discovery, or I believe the proper way was to cite Atlantic Marine and show that this is a different kind of motion. It shouldn't be brought under 12b-3. It should be held in abeyance. There should be an order for a Rule 26 conference, which was not agreed upon by the other side. Why are you so reluctant to go to Pennsylvania? Well, my clients are from Horicon, Wisconsin. This is the largest all-inclusive vacation cellar in the country by their website. They marketed it in a location about 20 minutes away from my clients. All of the contact as to how this was purchased, any information as to what was presented contractually and when, would be in Wisconsin. All of the medical treatment, there's going to be doctors involved here. Cigatera, food poisoning is what this case ultimately is about, which is a unique diagnosis. It's not something that the doctors in Wisconsin really knew about on the front end of the case. It is something that's unique to the Caribbean-type area. Did you ever contest the authenticity or validity of the form selection clause and the contract that the defendants submitted with their motion to dismiss? I did. I asked that the court convert the motion to summary judgment and allow expedited discovery. I'm not talking about a request for discovery. Did you actually contest the validity of it or the authenticity of it or have some good faith basis to say this is not, in fact, the contract that my client signed? I don't know how I could have done that other than starting submitting affidavits myself, which is the impossible decision that you have to make then. You could tell the court that you've got a good faith basis to contest the validity or the authenticity of the contract that was submitted with the motion to dismiss. I didn't see that anywhere. There was a request for discovery, but I didn't see any statement by you that there was a good faith basis to challenge this document as authentic or valid. I believe there was an attack on the authenticity of the document in the first heading, or maybe the third heading of the response brief, asking that the court not consider affidavits submitted that allow discovery or treat it as an issue of fact. So it was just a request to take discovery? It was a request to take discovery and convert the motion either to form nonconvenience or summary judgment. So it wasn't really a statement that there was a good faith basis to challenge the document itself. And I don't know how I could have done that sort of submitting an affidavit into the record, which becomes problematic. Whom did your clients pay? There's a question as to that as well. I believe that it was Fox World Travel. That's who they wrote the check to or credited? Yeah, it was an electronic payment, and I don't have complete information at this point either. Okay, thank you. Thank you very much. Mr. Conkle. Thank you, Your Honor. And may it please the Court, David Conkle and James Friedman of Godfrey & Kahn, on behalf of Epley's Epley Vacations LLC, AM Resorts LP, and AM Resorts LLC. Mr. and Mrs. Miller sued the wrong company in the wrong court. When they bought the vacation package in 2011, they agreed if there were going to be claims out of the vacation, that they would bring those in the Court of Common Pleas in Delaware County, Pennsylvania, where the defendant at Epley's are headquartered. It was printed on the back of the travel documents that they used to travel. That's in Ms. Davidson's affidavit that we attached to our motion to dismiss. There's simply no way that they could have gotten to the Dominican Republic without those travel documents. And those terms are on the back, including the forum selection clause that we raised in the motion to dismiss. More than three years later, they sued Apple Leisure Corporation, which doesn't exist, and then they brought on my clients a year after that as additional defendants. As to the procedural fairness of the motion to dismiss raised by opponents counsel, the sole argument was not that it was improper venue due to the forum selection clause. That certainly was one of our arguments, but we also argued that there was no personal jurisdiction, that substantial events didn't occur in the state of Wisconsin, that basically everything related to Wisconsin started and ended with them going to Fox World Travel and buying the vacation. We would have to know a lot more about the interlocking relationships between these various defendants and the travel company that sold this couple the vacation in order to decide a question of personal jurisdiction, wouldn't we? That kind of thing, especially in this context, would be difficult to resolve on the pleadings. Well, they could have asked for discovery on those issues, and in fact, notwithstanding what my opponents counsel just said, they did serve discovery. They served three interrogatories, which we answered. Those weren't directed to personal jurisdiction. They were about Apple Leisure Group and the trademark and that relationship to the rest of the entities. We answered those even though we were under no obligation to do so because we believe that there was no personal jurisdiction in this case. They could have asked for additional discovery on the personal jurisdiction issue. I think that they could have been more specific as to what they were asking for to give the lower court an idea of where this was going. The same could be said of the authenticity issue. I don't think that they disputed the authenticity or the validity of it. What they asked for was, well, we're not really sure what we signed or what we gave to them. If they had personal recollection that they didn't receive these documents, they could have put that in the form of an affidavit to the lower court, and they didn't. If they had an argument as to why the form selection clause shouldn't be enforced otherwise, they could have made that argument to the lower court, and they didn't. All they said was that it was procedurally improper to bring it under 12b-3. We understand what Atlantic Marine says. We've briefed the court on our reasons for bringing it under 12b-3 rather than form non-convenes. At the end of the day, I'm not sure why it really matters as far as Atlantic Marine is concerned. If you have a valid form selection clause, it should be enforced on all but exceptional circumstances. There's no exceptional circumstances here. Counsel, you've argued as an alternative ground for affirmance that disclaimers let your clients off the hook, right? That's right. So how much did your clients get paid for this vacation? It was slightly less than $5,000, Your Honor. I don't think that's in the record, but that's the amount that I recall. Suppose no hotel or restaurant or local travel provider in the Dominican Republic had honored the contract, had honored the plaintiff's tickets. Would your client be off the hook in return for the $5,000 they were paid? When you say they hadn't honored that the plaintiff had shown up in the hotel setting. You slide down to the Dominican Republic and everybody looks at them and says, who are you? Then I think they absolutely could. Why wouldn't your disclaimers get you off that hook? I think what the disclaimers get you off the hook for is what those entities do while you are there, whether your room is satisfactory. As long as they do something? Sorry? As long as they provide a bed, for example, even if it's infested with bed bugs and lice, your clients would be off the hook? I think that that's right. I think we disclaim all liability for actions and omissions of the hotel. But not a complete omission to provide service. Yeah, I think that would be a breach of contract on our part because that would not have been as a. . . Where do you draw that line from the contract language? Well, I think in the contract language what it says is we've made reasonable attempts or reasonable efforts to make sure that your accommodations are as you bought them. I think that if, as you're suggesting, Your Honor, that there had been bed bugs or there wasn't room at all, that we would have breached our obligation to do what's required under the reasonable accommodation. What are the issues then as to what your disclaimers mean? The disclaimers are simply a recognition of the fact that my clients don't own the hotel. They don't operate the hotel. It's owned by a Dominican company. The clients take the money. We do take the money, and then we do so for creating and compiling and booking the travel, whether that's the airplane ticket or food. You're delivering the services, right? Sorry? And delivering, making sure those services are delivered. Yes. Right, Your Honor. So what are you disclaiming? We're disclaiming the liability for anything that happens while on the vacation that is as a result of the actions or omissions of the hotel. I'm sorry. That makes no sense to me. It sounds to me like you're saying we stand by our contract, but we're not responsible for anything. What am I missing here? I think we're not responsible for anything that is done by the hotel while they are there. If we fail to provide that which we've been paid for, i.e., accommodations, or if they had shown up at the airport and hadn't been able to get on the plane, they could have sued us for breach of contract. The other thing to point out is there's a lot of back and forth in the briefs about the incorporation by reference doctrine. Under 12b-6, certainly incorporation by reference and what a defendant is allowed to put in the motion to dismiss certainly matters. But the incorporation by reference doctrine is directed at cases that are about contracts. But we also moved under 12b-2 and 12b-3, and there submitting affidavits and extrinsic evidence is entirely appropriate without converting it to anything. There's no rule that requires a judge to see a motion to dismiss based on personal jurisdiction and convert that to one for summary judgment. That's under 12b-6. We do not accept and expressly disclaim any liability for the actions or omissions of these independent suppliers. But you're saying, oh, we are responsible for some of their omissions or some of their actions. We're responsible for our own omissions. And I think that if we had failed to contact, for example, the hotel and so there was no You make the reservations for the plaintiffs, and then the hotel breaches that. They say we're overbooked. Then I think our breach would be, and I think it's the immediately preceding sentence of what you just read, Your Honor, where it talks about the reasonable efforts we make to make sure that they have those. We take reasonable steps, but we're disclaiming any liability for actions or omissions of anybody else, including the folks that we've made these arrangements. To me, this is just nonsense. You're taking a lot of money from people for the dream vacations and then disclaiming any responsibility for it and letting it for you to say now, well, no, we do take responsibility in the face of the arguments you've made in the contractual way, which makes no sense to me. Well, I would say, first of all, it's only one of several reasons we move to dismiss. You made it. Sorry? You made the argument, and you have urged it in this court. Yes, absolutely, Your Honor. And I think we stand by that argument that in this case, under these facts, we can't be held liable, under the disclaimer, for what the hotel did in selecting the fish, in preparing the menu, in choosing which fish suppliers. We didn't have any input on that. How about bed bugs? Sorry? How about bed bugs? What? I don't know. The hotel is infested with bed bugs. I don't understand how we would be responsible for that based on the contractual issue. Because you chose the hotel. Well, we didn't choose the hotel, Your Honor. The plaintiffs chose the hotel, Your Honor. They chose that specific hotel. As part of a package that you all sell, right? Yes, but we sell vacation packages to lots of different hotels and locations throughout the Caribbean area. This may not be the case, but I would suggest you all seriously reexamine that business model. I think what it is, is the recognition, Your Honor, that the hotels are operated, owned, and managed by separate entities. My clients are simply trying to make sure that their customers understand that they aren't the ones operating these hotels. That's the first sentence of two sentences prior to what you just read. It states out that we have contracted with airlines and hotels for those things. I see my time is up if there are no further questions. Thank you, Mr. Conkle. Anything further, Mr. Vanderloop? Unless the Court has any questions. Okay, thank you very much. The case is under advisement.